598 So.2d 1152 (1992)
STATE of Louisiana
v.
Fred JOHNSON, Jr.
No. KA 91 0128.
Court of Appeal of Louisiana, First Circuit.
April 10, 1992.
Writ Denied July 1, 1992.
*1154 Jason P. Lyons, Asst. Dist. Atty., Houma, for plaintiff and appelleeState of La.
Anthony P. Champagne, Indigent Defender Bd., Houma, for defendant and appellantFred Johnson, Jr.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
The defendant, Fred Johnson, Jr., was charged by bill of information with armed robbery, a violation of LSA-14:64A. The defendant pled not guilty and, after trial by jury, was found guilty as charged. The defendant was sentenced to fifteen years at hard labor[1]. The defendant appealed, urging eleven assignments of error:
The defendant expressly abandoned assignments of error numbers one, two, three, and four. See Uniform Rules-Courts of Appeal, Rule 2-12.4.

FACTS
On March 19, 1990, Richard Barrios was working at the Shoprite convenience store *1155 in Schriever, Louisiana. At approximately 2:15 a.m., a black male entered the store, took a soft drink from the drink cooler, and walked to the front of the store where he placed the drink on the counter near the cash register. Barrios was busy waiting on another customer when the black male, later identified as the defendant, left the store, leaving the soft drink on the counter. After the other customers left the store, the defendant entered the store again. The defendant asked Barrios some questions about the food in the deli but told Barrios all he wanted was the soft drink that he had left on the counter. The defendant handed Barrios a dollar bill to pay for the soft drink. Barrios testified that when he placed the dollar bill in the cash register the defendant stabbed him in the right hand with a red ink pen. Barrios recounted that he jumped back and took the pen out of his hand. Barrios stated that the defendant had already begun taking the money out of the cash register and that defendant shouted at him, "Get back bitch before I kill you." Barrios testified that the defendant took all the money out of the cash register and ran out of the store. Barrios then sounded the alarm and called his manager.
Officer Elrin Fanguy, Jr., a detective for the Terrebonne Parish Sheriff's Office, testified that when he arrived at the store Terrebonne Parish Sheriff's Deputy Leroy Austin was already at the scene. Barrios had given Deputy Austin a description of the suspect, and Officer Fanguy issued an order to be on the lookout for the suspect. Officer Fanguy secured the soft drink bottle in an evidence bag. The defendant, who matched the physical and clothing description given to the officers by Barrios, was arrested a few hours after the robbery.
ASSIGNMENT OF ERROR NUMBER FIVE:
In his fifth assignment of error, the defendant contends that the trial court erred in allowing the victim, Richard Barrios, to make an in-court identification of the defendant, over the objection of the defendant. The defendant maintains that Barrios had three prior opportunities to identify the defendant and was unable to do so. The defendant sets forth that, approximately two hours after the robbery, the police gave the victim a book of pictures to view. The victim was told by the police that a picture of the suspect was contained in the book. The victim was unable to pick out the assailant. Sometime later the victim was given a photographic lineup to view which contained only five photographs. The victim was again told by the police that one of the photographs was that of the suspect. The victim was unable to pick out the assailant. Subsequently, the victim was given the opportunity to view a live lineup. The defendant was one of five people in the lineup. The victim identified person number two in the lineup as the man he thought was the assailant. The victim was again unsuccessful in identifying the defendant as the assailant, as the defendant was person number three in the lineup. The defendant argues that, after three unsuccessful attempts at identification, the only way the victim would have been able to identify his assailant in court was to deduce that he must be the defendant seated with the defense attorney.
A pre-trial identification is not a prerequisite to an in-court identification. State v. Long, 408 So.2d 1221, 1225 (La. 1982). It is established in the jurisprudence of this State that a witness' failure to identify an accused at a pretrial lineup does not render a later in-court identification inadmissible and that failure to identify a suspect at a pretrial lineup is a matter which addresses itself to the weight of the witness' testimony rather than its admissibility. State v. Wright, 410 So.2d 1092, 1098 (La.1982). The defendant's attack on the in-court identification of the defendant by the victim addresses itself to the credibility of his testimony rather than to the admissibility of his in-court identification. The weight to be given a witness' testimony is an issue which must be determined by the finder of fact. State v. McZeal, 352 So.2d 592, 597 (La.1977).
Furthermore, the trial judge in the instant case stated that the cross-examination can cure any possible fatal defect *1156 and that the defense attorney did an excellent job on cross-examination and cured any defect which may have existed as to the in-court identification of the defendant. The fact that the victim previously was unable to identify the defendant is one factor to be considered in assessing the overall reliability of the identification. If the defense is allowed ample opportunity to cross-examine the witness, there is usually ample opportunity to remedy any suggestiveness in the identification. See State v. Evans, 512 So.2d 615, 619 (La.App. 2d Cir. 1987), writ denied, 516 So.2d 367 (La.1988); State v. Buie, 477 So.2d 157, 162 (La.App. 1st Cir.1985). In the instant case, the victim was carefully and adequately cross-examined by defense counsel in an effort to discredit his identification of the defendant as the man who robbed him. Thus, we find that it was within the jury's province to weigh the evidence and judge it appropriately.
Therefore, we do not find that the trial court erred in allowing the victim to make an in-court identification of the defendant as the person who robbed him. We find this assignment of error to be without merit.
ASSIGNMENTS OF ERROR NUMBERS SIX, EIGHT, NINE, AND TEN:
In his sixth assignment of error, the defendant contends that the trial court erred in admitting into evidence State's exhibits numbers one and two, which consisted of a latent fingerprint from a soft drink bottle and a photograph of the latent fingerprint. In assignment of error number eight, the defendant argues that the verdict was contrary to the law and evidence. The defendant urges in his ninth and tenth assignments of error that the trial court erred in denying the defendant's motions for post verdict judgment of acquittal and a new trial.
The defendant argues in assignment number six that the only evidence that linked the defendant to the crime was the latent fingerprint lifted from the soft drink bottle recovered from the counter of the store. The defendant sets forth two arguments as to why the trial court erred in allowing the fingerprint into evidence.
The defendant first argues that there was not sufficient identification of State's exhibit number one, the fingerprint, for it to be reliable. The defendant urges that State's exhibit number one fell short of the required chain of custody, thus rendering it and the photograph of it, State's exhibit number two, unsuitable for introduction into evidence.
Louisiana Code of Evidence Article 901 provides, in pertinent part, as follows:
A. General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
In order to introduce demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected with the case. A continuous chain of custody is not essential to enable the State to introduce physical evidence as long as the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object originally seized. Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. Ultimately, chain of custody or connexity of the physical evidence is a factual matter for determination by the jury. State v. Spooner, 550 So.2d 1289, 1304 (La.App. 1st. Cir.1989), writ denied, 566 So.2d 394 (La.1990).
Linda Lirette, an officer with the Terrebonne Parish Sheriff's Office, testified that she received the soft drink bottle that was recovered from the store from Deputy Fanguy. She then dusted the bottle for fingerprints and lifted one partial latent print off the bottle, placed it on a card, and photographed it. Officer Lirette testified that she then gave the fingerprint card to Lt. Ronald Bergeron of the Terrebonne Parish Sheriff's Office to take it to the State Police Identification Bureau in Baton Rouge, Louisiana. Lirette testified that ordinarily she puts her name, the date, *1157 and the time on the fingerprint card; however, she stated that, because she knew the fingerprint card was being taken to the identification bureau in Baton Rouge, she only put the time on the card and put the rest of the information on the state police form that was sent to Baton Rouge along with the fingerprint card.
Lt. Bergeron testified that he transported the fingerprint to the identification bureau in Baton Rouge. He stated that the fingerprint card was locked in the evidence locker until he transported it to Baton Rouge.
Gwen Brashear, employed by the Louisiana State Police as a latent fingerprint examiner and accepted as an expert in the field of fingerprint comparison, testified that when she received the fingerprint, she made a comparison on the print and identified it as belonging to the defendant. Brashear stated that she then kept the evidence in her office until the day she was to appear in court. Further, at trial, the defendant was again fingerprinted; and Brashear matched his print to the one that was lifted off the soft drink bottle recovered from the crime scene. Thus, we find this argument to be without merit.
The defendant's second argument under assignment number six is that the only evidence that connects him with this crime is the fingerprint found on the soft drink bottle that the assailant touched just prior to the robbery. The defendant argues that, in order to support a conviction primarily on fingerprint evidence, it must be shown that the defendant's fingerprint was found under such circumstances as to exclude every reasonable hypothesis of innocence.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
A defendant's fingerprint on an object associated with a crime is direct evidence that the defendant touched the object at some time and is circumstantial evidence that he touched it at the time of the offense. When the State uses a fingerprint as circumstantial evidence of guilt, it must exclude any reasonable hypothesis that the defendant touched the object at some time other than the time of the offense. State v. Jackson, 582 So.2d 915, 918 (La.App. 2d Cir.1991).
The defendant contends that he may have touched the drink bottle at another time. However, Barrios saw defendant carry the bottle on which the fingerprint was found to the counter; and the bottle was retrieved by the investigating officer from the counter where it was left by defendant, immediately before he stabbed the victim. Therefore, under the circumstances herein, the only reasonable hypothesis to explain the presence of the defendant's fingerprint on the bottle is that the defendant was the individual who robbed Barrios. Thus, we find that a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded.
The defendant further argues in assignments numbers eight and nine that the verdict of the jury was contrary to the law and evidence and, for that reason, the trial court should have granted his motion for post-verdict judgment of acquittal.
LSA-R.S. 14:64A provides:
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the *1158 immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
The defendant contends that there was insufficient evidence to find him guilty of armed robbery because the State failed to prove that he was armed with a dangerous weapon when he robbed the store. The defendant contends that the ink pen used in the commission of the robbery is not a dangerous weapon.
LSA-R.S. 14:2(3) defines dangerous weapon to include:
... any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.
An instrumentality may be a "dangerous weapon" not solely because of the inherent danger it poses, but also because the instrumentality is used in a manner likely to result in death or great bodily harm. State v. Bonier, 367 So.2d 824 (La. 1979). Moreover, the dangerousness of the instrumentality because of its use is a factual question for the jury to decide. State v. Murff, 215 La. 40, 39 So.2d 817, 823 (1949); State v. Munoz, 575 So.2d 848, 850 (La.App. 5th Cir.), writ denied, 577 So.2d 1009 (La.1991).
The dangerous weapon alleged by the State in this case is an ink pen. Although the defendant argues that the ink pen is not a dangerous weapon, the evidence presented by the State supports the opposite conclusion. The victim testified that the defendant stabbed him in the hand with the ink pen. The defendant stabbed the victim in the hand with the pen in order to facilitate the robbery. The victim stated that the pen broke the skin on his hand and that he was bleeding. The victim estimated that the pen was stuck about a quarter of an inch into his hand. We find that the pen in the manner used, i.e., stabbing, can readily be described as an instrumentality calculated or likely to produce great bodily harm.
The defendant was apprehended by the police a few hours after the crime took place. The defendant matched the physical description of the assailant that the victim had given the police and was found with the clothing that matched the kind the victim reported the assailant was wearing. Moreover, the defendant's fingerprint was found on the soft drink bottle that the assailant had handled just prior to the robbery.
Viewing all of the evidence presented at trial in the light most favorable to the State, any rational trier of fact could have concluded beyond a reasonable doubt that the State proved all of the elements of armed robbery and defendant's identity as the assailant. Hence, these assignments of error are meritless.
The defendant further contends in his tenth assignment of error that, due to the cumulative impact of the alleged errors argued in his brief, he was denied a fair trial and, thus, should have been granted a new trial. Having found all the assignments of error raised by the defendant to be meritless, we likewise conclude that this assignment has no merit.
ASSIGNMENT OF ERROR NUMBER SEVEN:
In his seventh assignment of error, the defendant urges that the trial court erred in allowing the introduction of State's exhibit number four, a Polaroid photograph of the live lineup which was exhibited to the victim of the robbery.
The defendant argues that the photograph of the live lineup was of poor quality. The defendant contends that the facial features of the persons in the photo are not visible and that the only reason the State introduced this photo was to have the jury believe that the faces were so identical that anyone, including the victim, could have made the mistake of picking the wrong person.
The five black males in the lineup were approximately the same height and weight. None of the men in the photograph had facial hair, and all were dressed in identical prison uniforms. We find the defendant's contention lacks merit. The photograph was relevant to show the circumstances under which the victim was *1159 unable to identify the defendant and, therefore, was properly admitted. The picture introduced into evidence was identified as an exact depiction of the scene at the line-up. See State v. Jefferson, 284 So.2d 577 (La.1973); State v. Hall, 261 La. 777, 260 So.2d 913 (1972). Therefore, we find this assignment of error to be without merit.
ASSIGNMENT OF ERROR NUMBER ELEVEN:
In his final assignment of error, the defendant contends that the sentence imposed upon him was excessive, improper, and, under the circumstances, amounted to cruel and unusual punishment.
The Louisiana Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. La.C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990). In light of the criteria expressed by article 894.1, an appellate court in reviewing the appropriateness of a sentence should consider the circumstances of the crime, the trial court's stated reasons, and the factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir.1988).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has wide discretion in imposing a sentence within the statutory limits; and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990).
In imposing sentence, the trial court stated that it felt that there was an undue risk that during the period of a suspended sentence the defendant would commit another crime. The trial court further felt that the defendant is in need of a custodial environment, which could be provided most effectively by his commitment to an institution. The trial court also felt that a lesser sentence would deprecate the seriousness of the defendant's crime. Considering the above, we find that the trial court adequately complied with the article 894.1 guidelines.
We do not feel that the sentence imposed in this case is excessive. The defendant was sentenced to fifteen years at hard labor. The sentence for an armed robbery conviction ranges from five years to ninety-nine years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. LSA-R.S. 14:64B. The defendant's sentence of fifteen years at hard labor was at the lower range of the possible sentence that the defendant could have received. Further, the defendant was not sentenced without benefit of parole, probation or suspension of sentence as required by the statute[2]. Under these circumstances we find no abuse of discretion in the sentence imposed. Thus, we find this assignment of error to be without merit.
PATENT SENTENCING ERROR
Under the authority of La. C.Cr.P. art. 920(2), this Court routinely reviews appellate records for patent error. After reviewing the record, we have discovered another patent sentencing error. Neither the minutes nor the sentencing transcript show that the trial court, in imposing this sentence, gave the defendant credit for time spent in actual custody prior to sentencing. Such an allowance of credit is mandatory. La.C.Cr.P. art. 880. Patent sentencing error occurs when the trial court fails to specify credit for time served. State v. Hall, 287 So.2d 798, 799 (La.1973); State v. Greer, 572 So.2d 1166, 1172 (La. App. 1st Cir.1990). Accordingly, we find patent sentencing error and amend the sentence to reflect that defendant is to be given credit for time served prior to the execution of his sentence. See La.C.Cr.P. art. 882A. Resentencing is not required; however, we remand this case and order *1160 the district court to amend the commitment and the minute entry of the sentence to reflect that defendant is given credit for time served.
CONVICTION AFFIRMED, SENTENCE AFFIRMED AS AMENDED AND CASE REMANDED FOR THE DISTRICT COURT TO AMEND THE COMMITMENT AND MINUTE ENTRY OF THE SENTENCE TO REFLECT CREDIT FOR TIME SERVED PRIOR TO EXECUTION OF THE SENTENCE.
NOTES
[1] In our review of the record for errors patent, we find that the sentence imposed upon the defendant is illegally lenient. The trial court failed to impose the mandatory requirement that an armed robbery conviction be without benefit of parole, probation or suspension of sentence. LSA-R.S. 14:64B. However, we are prevented from correcting the sentencing error. See State v. Fraser, 484 So.2d 122 (La.1986).
[2] See footnote number one.